Steven J. Nataupsky (SBN 155913)
steven.nataupsky@knobbe.com
Lynda J. Zadra-Symes (SBN 156511)
lynda.zadrasymes@knobbe.com
Matthew S. Bellinger (SBN 222228)
matt.bellinger@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA  92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

Attorneys for Plaintiff
MONSTER ENERGY COMPANY

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONSTER ENERGY COMPANY, a Delaware corporation, <br><br> Plaintiff, <br><br> v. <br><br> BALLZACK ASSOCIATES, LLC, a Florida limited liability company, and MALE FX LABS LLC, a Florida limited liability company, <br><br> Defendants. | Case No.  5:21-cv-00625 <br><br> **COMPLAINT FOR TRADEMARK INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, TRADEMARK DILUTION, AND UNFAIR COMPETITION** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff Monster Energy Company ("Plaintiff" or "Monster") hereby complains of Defendants Ballzack Associates, LLC ("Ballzack Associates") and Male FX Labs LLC ("Male FX Labs") (collectively, "Defendants"), and alleges as follows:

## I.  THE PARTIES

1.      Monster is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 1 Monster Way, Corona, California 92879.

2.      Monster is informed and believes, and on that basis alleges, that Defendant Ballzack Associates is a limited liability company organized and existing under the laws of the State of Florida, and having a place of business at 1634 Scarlet Oak Loop, Winter Garden, Florida 34787.

3.      Monster is informed and believes, and on that basis alleges, that Defendant Male FX Labs is a limited liability company purporting to be organized and existing under the laws of the State of Florida, and having a place of business at 1634 Scarlet Oak Loop, Winter Garden, Florida 34787.

## II.  JURISDICTION AND VENUE

4.      This is an action for: 1) trademark infringement and false designation of origin under 15 U.S.C. § 1125(a); 2) trademark infringement under 15 U.S.C. § 1114; 3) trademark dilution under 15 U.S.C. § 1125(c); 3) unfair competition arising under California Business & Professions Code § 17200 *et seq.*; and 4) California common law unfair competition.

5.      The Court has original subject matter jurisdiction over the claims in this Complaint for trademark infringement, false designation of origin, and trademark dilution pursuant to 15 U.S.C. §§ 1116 and 1121(a) and also pursuant to 28 U.S.C. §§ 1331 and 1338, as these claims arise under the laws of the United States.  The Court has supplemental jurisdiction over the claims in this Complaint for state statutory and common law unfair competition pursuant to 28 U.S.C. §§

1338(b) and 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

6. This Court has personal jurisdiction over Defendants. Defendants have marketed, advertised, promoted, and/or sold their goods, including their products complained of herein, in California, including in this Judicial District. In addition, by committing acts of trademark infringement, false designation of origin, trademark dilution, and unfair competition in this Judicial District, including, but not limited to, by using infringing marks in connection with the marketing, advertisement, promotion, and/or sale of products to customers in this Judicial District, Defendants' acts form a substantial part of the events or omissions giving rise to Monster's claims.

7. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) at least because a substantial portion of the transactions, occurrences, events or omissions complained of herein took place in this Judicial District.

### III. COMMON ALLEGATIONS FOR ALL CLAIMS OF RELIEF

### A. Monster's Trademarks

8. Monster is a nationwide leader in the business of developing, marketing, selling, and distributing beverages. Monster has achieved extensive exposure and widespread recognition of its MONSTER™ brand through its extensive sales and its marketing and promotion of the brand.

9. In 2002, long before Defendants' acts described herein, Monster launched its MONSTER ENERGY® drink brand, bearing its now-famous MONSTER ENERGY® mark, ⓜ® mark ("Claw Icon Mark"), and UNLEASH THE BEAST!® mark. Images of Monster's flagship original MONSTER ENERGY® drink, the container of which displays the MONSTER ENERGY® mark, Claw Icon Mark, and UNLEASH THE BEAST!® mark, are shown below.

/ / /

-2-

1
2
3
4
5
6
7
8
9



10
11
12
13
14
15
16
17



18   10.   Monster's successful line of MONSTER drinks has grown to include

19   numerous other well-known products, the containers and packaging of which are

20   all prominently marked with one of Monster's MONSTER-inclusive marks and

21   the Claw Icon, and many of which are also marked with Monster's UNLEASH

22   THE BEAST!® mark or other UNLEASH-inclusive marks.  The MONSTER line

23   of drinks includes or has included, but is not limited to, the following: original

24   Monster Energy®; Lo-Carb Monster Energy®; Monster Assault®; Monster

25   Energy® Import; Monster Energy Absolutely Zero®; Punch Monster®; Monster

26   Energy Unleaded®; the Juice Monster® line of energy drinks; the Monster Energy

27   Ultra® line of energy drinks; Monster Cuba-Lima®; Ubermonster®; the Monster

28   Rehab® line of tea plus energy drinks; the Java Monster® line of dairy based

coffee plus energy drinks; the Muscle Monster® line of energy shakes; Caffé Monster®; Espresso Monster®; the Monster Maxx® line of energy drinks; the Monster Dragon Tea® line of energy drinks; and the Monster Hydro® line of drinks, among others (referred to collectively as "MONSTER line of drinks"). Some additional examples of products in the MONSTER line of drinks are shown below.



11.    Monster is the owner of numerous trademark registrations for marks that incorporate its famous MONSTER™ mark for beverages and nutritional supplements, and other products and services, including, but not limited to, the following U.S. Trademark Registrations:

| MARK | REG. NO. | GOODS | DATE FILED | REG. DATE |
|---|---|---|---|---|
| MONSTER ENERGY | 3,044,315 | Nutritional supplements in liquid form, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 5/23/2003 | 1/17/2006 |

-4-

| MARK | REG. NO. | GOODS | DATE FILED | REG. DATE |
|---|---|---|---|---|
| MONSTER ENERGY | 3,057,061 | Fruit juice drinks having a juice content of 50% or less by volume that are shelf stable, carbonated soft drinks, carbonated drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 4/18/2002 | 2/27/2006 |
| MONSTER ENERGY | 4,036,680 | Nutritional supplements in liquid form | 9/11/2007 | 10/11/2011 |
| MONSTER ENERGY | 4,036,681 | Non-alcoholic beverages, namely, energy drinks, excluding perishable beverage products that contain fruit juice or soy | 9/11/2007 | 10/11/2011 |
| M MONSTER ENERGY | 3,044,314 | Nutritional supplements in liquid form, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 5/23/2003 | 1/17/2006 |
| M MONSTER ENERGY | 3,134,842 | Beverages, namely, carbonated soft drinks, carbonated drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, carbonated energy or sports drinks, fruit juice drinks having a juice content of 50% or less by | 5/7/2003 | 8/29/2006 |

| MARK | REG. NO. | GOODS | DATE FILED | REG. DATE |
|---|---|---|---|---|
| | | volume that are shelf stable, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | | |
| JAVA MONSTER | 3,959,457 | Beverages, namely, soft drinks; non-carbonated energy drinks; non-carbonated sports drinks; soft drinks and non-carbonated energy drinks, all enhanced with vitamins, minerals, nutrients, amino acids, and/or herbs, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 12/8/2005 | 5/10/2011 |
| JAVA MONSTER | 5,018,111 | Ready to drink coffee, iced coffee and coffee based beverages; ready to drink flavored coffee, iced coffee and coffee based beverages | 3/15/2016 | 8/9/2016 |
| LOCA MOCA JAVA MONSTER | 4,058,407 | Nutritional supplements in liquid form that include coffee as an ingredient<br><br>Beverages, namely, non-carbonated energy drinks; non-carbonated sports drinks; coffee-flavored soft drinks and non-carbonated energy drinks, all enhanced with vitamins, | 7/16/2010 | 11/22/2011 |

| MARK | REG. NO. | GOODS | DATE FILED | REG. DATE |
|---|---|---|---|---|
| | | minerals, nutrients, proteins, amino acids, and/or herbs, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | | |
| JUICE MONSTER | 4,716,750 | Nutritional supplements in liquid form<br><br>Non-alcoholic beverages, namely, energy drinks and drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, but excluding perishable beverage products that contain fruit juice or soy | 2/24/2012 | 4/7/2015 |
| LO-CARB MONSTER ENERGY | 3,852,118 | Nutritional supplements<br><br>Non-alcoholic beverages, namely, energy drinks, drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs | 2/13/2009 | 9/28/2010 |
| MONSTER ASSSAULT | 4,634,053 | Nutritional supplements in liquid form; vitamin fortified beverages<br><br>Non-alcoholic beverages, namely, energy drinks, energy drinks flavored with juice, sports drinks, all enhanced with vitamins, minerals, nutrients, proteins, amino | 11/15/2013 | 11/4/2014 |

| MARK | REG. NO. | GOODS | DATE FILED | REG. DATE |
|---|---|---|---|---|
| | | acids, and/or herbs, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | | |
| MONSTER REHAB | 4,111,964 | Ready to drink tea, iced tea and tea based beverages; ready to drink flavored tea, iced tea and tea based beverages | 8/24/2011 | 3/13/2012 |
| MONSTER REHAB | 4,129,288 | Nutritional supplements in liquid form<br><br>Beverages, namely, non-alcoholic non-carbonated drinks enhanced with vitamins, minerals, nutrients, proteins, amino acids and/or herbs; non-carbonated energy or sports drinks, fruit juice drinks having a juice content of 50% or less by volume that are shelf-stable; all the foregoing goods exclude perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 7/6/2010 | 4/17/2012 |
| MUSCLE MONSTER | 4,376,796 | Nutritional supplements in liquid form<br><br>Beverages, namely, soft drinks; non-alcoholic and non-carbonated drinks enhanced with vitamins, minerals, nutrients, | 7/2/2010 | 7/30/2013 |

| MARK | REG. NO. | GOODS | DATE FILED | REG. DATE |
|---|---|---|---|---|
| | | proteins, amino acids and/or herbs; non-carbonated energy or sports drinks; all the foregoing goods exclude perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | | |
| MUSCLE MONSTER | 4,451,535 | Vitamin fortified beverages<br><br>Dairy-based beverages; dairy-based energy shakes; energy shakes; chocolate energy shakes<br><br>Ready to drink chocolate-based beverages | 7/10/2013 | 12/17/2013 |
| PUNCH MONSTER | 4,604,556 | Nutritional supplements in liquid form; vitamin fortified beverages<br><br>Non-alcoholic beverages, namely, energy drinks, energy drinks flavored with juice, fruit-flavored drinks, soft drinks, sports drinks, all enhanced with vitamins, minerals, nutrients, amino acids and/or herbs; all the foregoing goods exclude perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 11/22/2013 | 9/16/2014 |

-9-

| MARK | REG. NO. | GOODS | DATE FILED | REG. DATE |
|---|---|---|---|---|
| UBER-MONSTER | 4,234,456 | Nutritional supplements in liquid form<br><br>Beverages, namely, carbonated soft drinks; non-alcoholic carbonated soft drinks and energy drinks enhanced with vitamins, minerals, nutrients, proteins, amino acids and/or herbs; carbonated energy drinks and sports drinks, all the foregoing goods exclude perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 7/9/2010 | 10/30/2012 |
| MONSTER ENERGY ULTRA RED | 4,532,292 | Nutritional supplements in liquid form; vitamin fortified beverages<br><br>Non-alcoholic beverages, namely, energy drinks, soft drinks, sports drinks, all enhanced with vitamins, minerals, nutrients, amino acids and/or herbs; all the foregoing goods exclude perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 6/13/2013 | 5/20/2014 |
| MONSTER ENERGY ULTRA BLUE | 4,534,414 | Nutritional supplements in liquid form; vitamin fortified beverages | 1/2/2013 | 5/20/2014 |

| MARK | REG. NO. | GOODS | DATE FILED | REG. DATE |
|------|----------|-------|------------|-----------|
|  |  | Non-alcoholic beverages, namely, energy drinks, soft drinks, sports drinks, all enhanced with vitamins, minerals, nutrients, amino acids and/or herbs; all the foregoing goods exclude perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not |  |  |
| MONSTER ENERGY ZERO ULTRA | 4,879,793 | Nutritional supplements in liquid form<br><br>Non-alcoholic beverages, namely, soft drinks, carbonated soft drinks, energy drinks, sports drinks; energy drinks and sports drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs | 12/18/2014 | 1/5/2016 |

12.     Attached hereto as Exhibits A1-A21 are true and correct copies of Monster's trademark registrations identified in Paragraph 11 above, which are hereby incorporated by reference.    Collectively, those registrations and trademarks, and the MONSTER mark and other MONSTER-containing marks used by Monster and identified in this Complaint, including all common law rights therein, are referred to as the "MONSTER Marks."

13.     Pursuant to 15 U.S.C. § 1065, U.S. Trademark Registration Nos. 3,044,315; 3,057,061; 4,036,680; 4,036,681; 3,134,842; 3,959,457; 4,058,407; 4,716,750; 3,852,118; 4,634,053; 4,111,964; 4,129,288; 4,376,796; 4,451,535;

/ / /

4,604,556; 4,234,456; 4,532,292; and 4,534,414 identified in Paragraph 11 above are incontestable.

14.    Monster is also the owner of numerous trademark registrations for marks that incorporate its famous Claw Icon Mark for beverages, nutritional supplements, and other products and services, including, but not limited to, the following U.S. Trademark Registrations:

| MARK | REG. NO. | GOODS | DATE FILED | REG. DATE |
|---|---|---|---|---|
|  | 2,903,214 | Drinks, namely, carbonated soft drinks, carbonated drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, carbonated and non-carbonated energy or sports drinks, fruit juice drinks having a juice content of 50% or less by volume that are shelf stable, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 5/7/2003 | 11/16/2004 |
|  | 3,434,822 | Non-alcoholic beverages, namely, energy drinks, excluding perishable beverage products that contain fruit juice or soy | 9/7/2007 | 5/27/2008 |

| MARK | REG. NO. | GOODS | DATE FILED | REG. DATE |
|---|---|---|---|---|
|  | 3,434,821 | Nutritional supplements | 9/7/2007 | 5/27/2008 |
|  | 5,022,676 | Nutritional supplements in liquid form<br><br>Non-alcoholic beverages, namely, carbonated soft drinks; carbonated drinks enhanced with vitamins, minerals, nutrients, proteins, amino acids and/or herbs; carbonated energy drinks and sports drinks | 5/28/2014 | 8/16/2016 |
|  | 3,134,841 | Beverages, namely, carbonated soft drinks, carbonated soft drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, carbonated energy and sports drinks, fruit juice drinks having a juice content of 50% or less by volume that are shelf stable, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 5/7/2003 | 8/29/2006 |

/ / /

-13-

| MARK | REG. NO. | GOODS | DATE FILED | REG. DATE |
|---|---|---|---|---|
|  | 4,768,827 | Nutritional supplements in liquid form<br><br>Ready to drink tea, iced tea and tea based beverages; ready to drink flavored tea, iced tea and tea based beverages<br><br>Non-alcoholic beverages, namely, soft drinks, energy drinks, sports drinks and fruit juice drinks, all the foregoing enhanced with vitamins, minerals, nutrients, proteins, amino acids and/or herbs | 2/4/2015 | 7/7/2015 |
|  | 4,849,688 | Nutritional supplements in liquid form; vitamin fortified beverages<br><br>Non-alcoholic beverages, namely, carbonated soft drinks; carbonated drinks enhanced with vitamins, minerals, nutrients, proteins, amino acids and/or herbs; carbonated energy drinks and sports drinks | 2/2/2015 | 11/10/2015 |
|  | 5,008,850 | Nutritional supplements in liquid form; vitamin fortified beverages<br><br>Non-alcoholic beverages, namely, soft drinks, carbonated soft drinks, energy drinks, and sports drinks; energy drinks and | 2/10/2015 | 7/26/2016 |

| MARK | REG. NO. | GOODS | DATE FILED | REG. DATE |
|------|----------|-------|-----------|-----------|
|  |  | sports drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs |  |  |

15.    Attached hereto as Exhibits B1-B8 are true and correct copies of Monster's trademark registrations identified in Paragraph 14 above, which are hereby incorporated by reference.   Collectively, those registrations and trademarks and other Claw Icon-containing marks used by Monster and identified in this Complaint, including all common law rights therein, are referred to as the "Claw Icon Marks."

16.    Pursuant to 15 U.S.C. § 1065, U.S. Trademark Registration Nos. 2,903,214; 3,434,822; 3,434,821; and 3,134,841 identified in Paragraph 14 above are incontestable.

17.    Additionally, as noted above, Monster has used its UNLEASH THE BEAST!® mark in connection with its MONSTER line of drinks since at least 2002.  Monster's UNLEASH THE BEAST!® mark, in addition to appearing on the original and best-selling MONSTER ENERGY® drink container continuously since 2002, has also appeared on the containers of other products in the MONSTER line of drinks, including, for example, continually appearing on the Lo-Carb MONSTER ENERGY® drink since that product was launched in 2003.

18.    Prior to the acts of Defendants complained of herein, Monster has also continuously used other marks containing the term UNLEASH, including, but not limited to, UNLEASH THE NITRO BEAST!® and UNLEASH THE ULTRA BEAST!® on its MONSTER line of drinks.  For example, Monster has used the UNLEASH THE NITRO BEAST!® since at least 2009 in connection with its MONSTER line of drinks containing nitrous oxide, which are currently branded as the MONSTER MAXX® line of drinks.  Monster has used the

-15-

UNLEASH THE ULTRA BEAST!® mark since at least 2012 in connection with its MONSTER ULTRA® line of drinks.  Some additional representative examples of Monster's use of these marks on its MONSTER line of drinks are shown below:





19.    Monster is the owner of numerous trademark registrations for its UNLEASH Marks for beverages, nutritional supplements, and other products and services, including, but not limited to, the following U.S. Trademark Registrations:

/ / /

| MARK | REG. NO. | GOODS | DATE FILED | REG. DATE |
|---|---|---|---|---|
| UNLEASH THE BEAST! | 2,769,364 | Fruit juice drinks, soft drinks, carbonated soft drinks and soft drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs | 12/18/2002 | 9/30/2003 |
| UNLEASH THE BEAST! | 5,820,901 | Nutritional supplements in liquid form | 1/16/2019 | 7/30/2019 |
| UNLEASH THE NITRO BEAST! | 4,394,044 | Non-alcoholic beverages, namely, carbonated soft drinks; carbonated drinks enhanced with vitamins, minerals, nutrients, proteins, amino acids and/or herbs; carbonated energy or sports drinks | 12/14/2010 | 8/27/2013 |
| UNLEASH THE NITRO BEAST! | 5,622,925 | Nutritional energy supplements in liquid form; nutritional supplement beverages containing vitamins | 12/14/2010 | 12/4/2018 |
| UNLEASH THE ULTRA BEAST! | 4,371,544 | Non-alcoholic beverages, namely, carbonated soft drinks; carbonated drinks enhanced with vitamins, minerals, nutrients, proteins, amino acids and/or herbs; carbonated energy drinks and sports drinks | 11/19/2012 | 7/23/2013 |
| UNLEASH THE ULTRA BEAST! | 5,633,094 | Nutritional energy supplements in liquid form; nutritional supplement beverages containing vitamins | 11/19/2012 | 12/18/2018 |

/ / /

20.     Attached hereto as Exhibits C1-C6 are true and correct copies of Monster's trademark registrations identified in Paragraph 19 above, which are incorporated herein by reference.   Collectively, those registrations and trademarks, including all common law rights therein, are referred to as the "UNLEASH Marks."

21.     Pursuant to 15 U.S.C. § 1065, U.S. Trademark Registration Nos. 2,769,364; 4,394,044; and 4,371,544 identified in Paragraph 19 above are incontestable.

22.     Monster has and continues to widely market and promote its MONSTER Marks, Claw Icon Marks, and UNLEASH Marks (collectively, "the Asserted Marks") by displaying the marks on billions of cans of its MONSTER line of drinks sold in the U.S.; on promotional and point of sale materials; on product samplings; apparel and merchandise; in magazines and other industry publications; on the MONSTER ENERGY® website, the MONSTER ARMY® website, and other Internet websites; on Monster's social media sites; at trade shows, concert tours and live events; and through sponsorship of athletes.

23.     The MONSTER line of drinks, which display the MONSTER Marks and the Claw Icon Marks, and many of which also display an UNLEASH Mark, on the beverage containers has achieved substantial commercial success.   Since 2002, Monster has sold more than 37 billion cans of its MONSTER line of drinks worldwide and sales of the MONSTER line of drinks have generated over $74 billion in estimated total retail revenues internationally.   Monster sells more than 5 billion cans per year worldwide, more than 2.5 billion of which are sold in the U.S. alone.

24.     The MONSTER brand has established itself as the best-selling energy drink brand in the United States.   The MONSTER line of drinks are sold in over 370,000 retail outlets in the United States, including convenience stores, gas stations, and grocery stores.

25.     Monster also invests substantial sums in marketing its brand.  Since 2002, Monster has spent approximately $8.5 billion in marketing and promoting its MONSTER brand, including the Asserted Marks.  From 2002-2013 alone, Monster spent $2.6 billion in marketing and promoting its MONSTER brand.

26.     Monster has distributed millions of point-of-sale marketing items bearing the Asserted Marks.  These point-of-sale marketing items include, but are not limited to, case stackers, stickers, displays for shelves, suction cup racks and coolers.   Below are some representative examples of Monster's point-of-sale materials.












27.   Monster also widely markets and promotes the Asserted Marks to consumers through sales and giveaways of clothing, bags, accessories, and numerous other items.  Below are some representative examples of clothing that Monster has licensed, sold, and/or given away clothing bearing some of the Asserted Marks.





28.    Monster's Asserted Marks have also received significant exposure in national publications.  For example, one or more of the marks have been featured in *Fortune*, *Newsweek*, *Forbes*, and *Business Week*, among other publications.

29.    Monster's Asserted Marks also receive extensive publicity and exposure through Monster's websites, including its www.monsterenergy.com website and social media sites including Monster's Facebook, Twitter, Instagram, and YouTube accounts.  Monster's Facebook page has over 25 million "likes."  Monster's Instagram page has over 7.4 million followers.  Monster's YouTube page has over 469 million views.  The Asserted Marks are displayed on these websites and/or social media sites.

30.    Monster also has and continues to widely market and promote the Asserted Marks through the sponsorship of athletes, athletic teams, and athletic competitions, as well as concerts and live events around the world.  The marks are also prominently displayed at live events sponsored by Monster, including through the use of promotional items.  Monster also frequently gives away products bearing the Asserted Marks to attendees at these events.

31.    As a result of Monster's substantial use and promotion of the Asserted Marks, Monster has obtained strong common law rights in the marks.  The marks have acquired great value as specific identifiers of Monster's products and services and serve to identify and distinguish the products and services from those of others.  Customers in this Judicial District and elsewhere readily

recognize these marks as distinctive designations of the origin of Monster's products and services.  The marks are intellectual property assets of enormous value as symbols of Monster and its quality products, services, reputation and goodwill.

**B.    Defendants' Infringing Activities**

32.    Defendants are engaged in the business of producing, selling, and distributing supplement products.  Defendants have marketed and sold, and are offering for sale, an herbal supplement product under the name RED MONSTER.  An example of Defendants' RED MONSTER product is shown below.



33.    Similar to the manner in which Monster frequently uses its Claw Icon mark together with its MONSTER Marks, including on its beverage containers, Defendants are also using a stylized "M" mark with their RED MONSTER mark as shown above.  Similar to the manner in which Monster uses its UNLEASH Marks in connection with its MONSTER brand, including on many of its beverage containers, Defendants are also using an UNLEASH mark – UNLEASH THE MONSTER WITHIN – as shown above.

34.    In addition, Defendants have marketed and sold, and are offering for sale, a workout supplement products under the name RED ENERGY which also

displays an UNLEASH mark – UNLEASH THE ENERGY WITHIN – on the product packaging.  An example of Defendants' RED ENERGY product is shown below.



35.     Defendants are not affiliated with Monster.  At no time has Monster ever given Defendants license, permission, or authority to use or display any of Monster's marks, including the Asserted Marks.

36.     Defendants were aware of Monster and at least some of its marks at least as early as June 2020.  On January 31, 2020, Male FX Labs filed U.S. Trademark Application Serial No. 88/780061 ("the '061 Application") for the mark RED MONSTER in Class 5 for "natural herbal supplements."  On June 11, 2020, Monster filed a Notice of Opposition with the United States Patent and Trademark Office Trademark Trial and Appeal Board ("TTAB") (Opposition No. 91256319).  The Notice of Opposition alleged that the RED MONSTER mark is likely to cause confusion with Monster's MONSTER Marks.  Male FX Labs was served with the Notice of Opposition but did not file any response.  On September 21, 2020, the TTAB entered a judgment by default against Male FX Labs and refused registration of the RED MONSTER application.

/ / /

37.    Despite the judgment entered by the TTAB, Defendants thereafter continued to market and sell the RED MONSTER and RED ENERGY products.

38.    Without permission or consent from Monster, Defendants have infringed Monster's Asserted Marks in interstate commerce by making, using, promoting, advertising, selling, and/or offering to sell the RED MONSTER and RED ENERGY products using marks that are confusingly similar to Monster's Asserted Marks.

39.    Upon information and belief, Defendants' actions alleged herein are intended to cause confusion, mistake, or deception as to the source of Defendants' products and are intended to cause consumers and potential customers to believe that Defendants' business and the products that they offer are associated with Monster or its MONSTER family of products or services, when they are not.

40.    Defendants have a duty to avoid confusion with Monster and its marks because Defendants entered the market after Monster.  Nevertheless, Defendants have purposely promoted, marketed, and/or sold their goods in a manner that is likely to cause confusion with Monster and its products.

41.    By virtue of the acts complained of herein, Defendants have created a likelihood of injury to Monster's business reputation and goodwill, caused a likelihood of consumer confusion, mistake, and deception as to the source of origin or relationship of Monster's goods and Defendants' goods, and have otherwise competed unfairly with Monster.

42.    Upon information and belief, Defendants' acts complained of herein have been willful and deliberate.

43.    Defendants' acts complained of herein have caused damage to Monster in an amount to be determined at trial, and such damages will continue to increase unless Defendants are enjoined from their wrongful acts and infringement.

/ / /

44.    Defendants' acts complained of herein have caused Monster to suffer irreparable injury to its business.  Monster will suffer substantial loss of goodwill and reputation unless and until Defendants are preliminarily and permanently enjoined from the wrongful acts complained of herein.

## IV.  <u>FIRST CLAIM FOR RELIEF</u>

**(Trademark Infringement and False Designation of Origin Under 15 U.S.C. § 1125(a))**

45.    Monster hereby repeats, realleges, and incorporates by reference Paragraphs 1-44 of this Complaint as if set forth fully herein.

46.    This is an action for trademark infringement and false designation of origin arising under 15 U.S.C. § 1125(a).

47.    As a result of the widespread use and promotion of Monster's Asserted Marks, the marks have acquired secondary meaning to consumers and potential customers, in that consumers and potential customers have come to associate the marks with Monster.

48.    Defendants have infringed the Asserted Marks, and created a false designation of origin, by using in commerce, without Monster's permission, those marks or confusingly similar marks in connection with Defendants' business and the products offered by Defendants.

49.    Defendants' actions are likely to cause confusion and mistake, or to deceive as to the affiliation, connection, or association of Monster with Defendants, and/or as to the origin, sponsorship, or approval of Defendants' products and/or commercial activities, in violation of 15 U.S.C. § 1125(a).

50.    Monster is informed and believes, and on that basis alleges, Defendants acted with the intent to trade upon Monster's reputation and goodwill by causing confusion and mistake among customers and the public and to deceive the public into believing that Defendants' products are associated with, sponsored by or approved by Monster, when they are not.

51.     Monster is informed and believes, and on that basis alleges, that Defendants had actual knowledge of Monster's ownership and prior use of the Asserted Marks, and without the consent of Monster, have willfully and intentionally violated 15 U.S.C. § 1125(a).

52.     Defendants, by their actions, have damaged Monster in an amount to be determined at trial.

53.     Defendants, by their actions, have irreparably injured Monster.  Such irreparable injury will continue unless Defendants are preliminarily and/or permanently enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

## V.  SECOND CLAIM FOR RELIEF

### (Trademark Infringement Under 15 U.S.C. § 1114)

54.     Monster hereby repeats, realleges, and incorporates by reference Paragraphs 1-53 of this Complaint as if set forth fully herein.

55.     This is a claim for trademark infringement arising under 15 U.S.C. § 1114.

56.     Monster owns valid and enforceable federally registered trademarks for the Asserted Marks, including at least the registrations listed in Paragraphs 11, 14, and 19 above.

57.     Defendants have used in commerce, without permission from Monster, colorable imitations and/or confusingly similar marks to Monster's Asserted Marks that are the subject of one or more of Monster's U.S. Trademark Registrations listed in Paragraphs 11, 14, and 19 above in connection with the advertising, marketing, and/or promoting of Defendants' goods.  Such use is likely to cause confusion or mistake, or to deceive.

58.     Upon information and belief, Defendants' activities complained of herein constitute willful and intentional infringements of Monster's registered marks, and Defendants acted with the intent to trade upon Monster's reputation

and goodwill by causing confusion and mistake among customers and the public and to deceive the public into believing that Defendants' goods are associated with, sponsored by, originated from, or are approved by Monster, when they are not.

59.     Upon information and belief, Defendants had actual knowledge of Monster's ownership and prior use of the Asserted Marks, and have willfully violated 15 U.S.C. § 1114.

60.     Defendants, by their actions, have damaged Monster in an amount to be determined at trial.

61.     Defendants, by their actions, have irreparably injured Monster. Such irreparable injury will continue unless Defendants are preliminarily and/or permanently enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

## VI.  <u>THIRD CLAIM FOR RELIEF</u>

### (Federal Dilution Under 15 U.S.C. § 1125(c))

62.     Monster hereby repeats, realleges, and incorporates by reference Paragraphs 1-61 of this Complaint as if set forth fully herein

63.     This is a claim for federal trademark dilution arising under 15 U.S.C. § 1125(c).

64.     Products sold under Monster's Claw Icon mark have been widely advertised, promoted, and distributed to the purchasing public throughout the United States and the world. By virtue of the wide renown acquired by Monster's Claw Icon mark, coupled with the national and international distribution and extensive sale of various products distributed under the Claw Icon mark, Monster's Claw Icon mark is famous, and became so prior to Defendants' acts complained of herein.

65.     Defendants' unauthorized commercial use of its stylized "M" mark as shown on the packaging above of the RED MONSTER product in connection

with Defendants' business and the RED MONSTER product offered by Defendants has caused and is likely to continue to cause dilution of the distinctive qualities of Monster's famous Claw Icon mark.

66.     Defendants' acts are likely to tarnish, injure, or trade upon Monster's business, reputation or goodwill, and to deprive Monster of the ability to control the use of its Claw Icon mark, and the quality of products associated therewith.

67.     Monster is informed and believes, and on that basis alleges, that Defendants' acts of dilution have been willful and deliberate.

68.     Defendants, by their actions, have damaged Monster in an amount to be determined at trial.

69.     Defendants, by their actions, has irreparably injured Monster. Such irreparable injury will continue unless Defendants are preliminarily and/or permanently enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

## VII.  <u>FOURTH CLAIM FOR RELIEF</u>

### (Unfair Competition Under California Business & Professions Code §§ 17200 *et seq.*)

70.     Monster hereby repeats, realleges, and incorporates by reference Paragraphs 1-69 of this Complaint as if set forth fully herein.

71.     This is an action for unfair competition under California Business & Professions Code §§ 17200, *et seq.*

72.     By virtue of the acts complained of herein, Defendants have intentionally caused a likelihood of confusion among consumers and the public and have unfairly competed in violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.*

73.     Defendants' acts complained of herein constitute trademark infringement, unfair competition, and unlawful, unfair, malicious or fraudulent business practices, which have injured and damaged Monster.

74.     Defendants, by their actions, have irreparably injured Monster.  Such irreparable injury will continue unless Defendants are preliminarily and permanently enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

## VIII.  FIFTH CLAIM FOR RELIEF

### (California Common Law Unfair Competition)

75.     Monster hereby repeats, realleges, and incorporates by reference Paragraphs 1-74 of this Complaint as if set forth fully herein.

76.     This is an action for unfair competition under the common law of the State of California.

77.     Defendants' acts complained of herein constitute trademark infringement and unfair competition under the common law of the State of California.

78.     By virtue of the acts complained of herein, Defendants have willfully and intentionally caused a likelihood of confusion among the purchasing public in this Judicial District and elsewhere, thereby unfairly competing with Monster in violation of the common law of the State of California.

79.     Defendants' aforementioned acts have damaged Monster in an amount to be determined at trial.

80.     Defendants have irreparably injured Monster.  Such irreparable injury will continue unless Defendants are preliminarily and permanently enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

81.     Defendants' willful acts of unfair competition under California common law constitute fraud, oppression and malice.  Accordingly, Monster is entitled to exemplary damages pursuant to Cal. Civ. Code § 3294(a).

/ / /

# IX.  PRAYER FOR RELIEF

WHEREFORE, Monster prays for judgment against Defendants as follows:

A.    That the Court render a final judgment in favor of Monster and against Defendants on all claims for relief alleged herein;

B.    That the Court render a final judgment that Defendants have willfully violated the provisions of 15 U.S.C. § 1125(a) by infringing Monster's Asserted Marks and by falsely designating the origin of their products;

C.    That the Court render a final judgment that Defendants have willfully violated the provisions of 15 U.S.C. § 1114 by infringing Monster's trademark rights in marks that are the subject of one more of the U.S. Trademark Registrations listed in Paragraphs 11, 14, and 19 above;

D.    That the Court render a final judgment that Defendants have willfully violated 15 U.S.C. § 1125(c) by diluting Monster's famous Claw Icon mark;

E.    That the Court render a final judgment that Defendants willfully violated the provisions of California Business & Professions Code §§ 17200, *et seq.* by committing trademark infringement and unfairly competing with Monster;

F.    That the Court render a final judgment that Defendants willfully violated California common law by unfairly competing with Monster;

G.    That Defendants, their agents, servants, employees, attorneys, successors, and assigns, and all other persons in active concert or participation with Defendants who receive actual notice of the injunction by personal service or otherwise, be forthwith preliminarily and permanently enjoined from:

i.    using Monster's Asserted Marks, or any other marks confusingly similar thereto (including the RED MONSTER, UNLEASH THE MONSTER WITHIN, and stylized "M" mark on Defendants'

packaging as shown in Paragraph 32 above, and the UNLEASH THE ENERGY WITHIN mark on Defendants' packaging as shown as shown in Paragraph 34 above), in connection with Defendants' business or the goods offered by Defendants, including in connection with the advertising, promoting, manufacture, distribution, or sale of Defendants' goods, and/or using Monster's Asserted Marks, or any other marks confusingly similar thereto (including the RED MONSTER, UNLEASH THE MONSTER WITHIN, and stylized "M" mark on Defendants' packaging as shown in Paragraph 32 above, and the UNLEASH THE ENERGY WITHIN mark on Defendants' packaging as shown as shown in Paragraph 34 above), in any manner that is likely to create the impression that Defendants' goods originate from Monster, are endorsed by Monster, are sponsored by Monster, are affiliate with Monster, or are connected in any way with Monster;

ii. filing any applications for registration of any marks confusingly similar to Monster's Asserted Marks;

iii. otherwise infringing any of Monster's Asserted Marks, or any of Monster's other trademarks;

iv. diluting the distinctive qualities of the Claw Icon mark or any of Monster's other trademarks;

v. falsely designating the origin of Defendants' goods in any manner suggesting that the goods originate from Monster;

vi. unfairly competing with Monster in any manner whatsoever; and

vii. causing a likelihood of confusion or injury to Monster's business reputation;

H. That Defendants be directed to file with this Court and serve on Monster within thirty (30) days after the service of the injunction, a report, in

-31-

writing, under oath, setting forth in detail the manner and form in which they have complied with the injunction pursuant to 15 U.S.C. § 1116;

I.     That Defendants be required to account for and pay to Monster any and all profits derived by Defendants by virtue of Defendants' acts complained of herein;

J.     That Defendants be ordered to pay over to Monster all damages that Monster has sustained as a consequence of the acts complained of herein, subject to proof at trial, together with prejudgment and post-judgment interest;

K.     That this case be deemed exceptional and the amount of the damages be trebled and that the amount of profits be increased by as many times as the Court deems appropriate, pursuant to 15 U.S.C. § 1117;

L.     That Monster be awarded exemplary damages from Defendants pursuant to Cal. Civ. Code. § 3294;

M.    That Defendants' actions be deemed willful;

N.     That an award of reasonable costs, expenses, and attorneys' fees be awarded to Monster pursuant to at least 15 U.S.C. § 1117;

O.     That Defendants be required to deliver and destroy all product, packaging, promotional materials, advertising, and other unauthorized materials bearing Monster's Asserted Marks, or any confusingly similar marks, pursuant to 15 U.S.C. § 1118;

P.     That Monster be awarded restitution and disgorgement; and

Q.     That Monster be awarded such other and further relief as this Court may deem just.

/ / /

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated:  April 8, 2021         By:  */s/ Matthew S. Bellinger*
                                   Steven J. Nataupsky
                                   Lynda J. Zadra-Symes
                                   Matthew S. Bellinger

                              Attorneys for Plaintiff,
                              MONSTER ENERGY COMPANY

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Monster Energy Company hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: April 8, 2021        By: */s/ Matthew S. Bellinger*
                                 Steven J. Nataupsky
                                 Lynda J. Zadra-Symes
                                 Matthew S. Bellinger

                                 Attorneys for Plaintiff,
                                 MONSTER ENERGY COMPANY

-34-